UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ADMINISTRATORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL CONVENTION SERVICES, LLC, <br><br> Defendant. | CASE NO. C22-1519JLR <br><br> ORDER |

## I.  INTRODUCTION

Before the court is Plaintiff Northwest Administrators Inc.'s ("Northwest Administrators") motion for default judgment (Mot. (Dkt. # 8)) against Defendant National Convention Services, LLC ("NCS"). NCS, which has not appeared in this action, did not file a response to the motion. (*See generally* Dkt.)  The court has

ORDER - 1

considered the motion, the balance of the record, and applicable law. Being fully advised,[1] the court GRANTS Northwest Administrators's motion.

## II. BACKGROUND

Northwest Administrators is the authorized administrative agency for the Western Conference of Teamsters Pension Trust (the "Trust"). (Hughes Decl. (Dkt. # 9) ¶ 2.) The Trust is a joint labor-management fund created pursuant to Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. (*See* Compl. (Dkt. # 1) ¶¶ II, III; Hughes Decl. ¶ 6.) The Trust is funded by employer contributions made on behalf of employees who are covered by the collective bargaining agreement (the "CBA") between Teamsters Local 631 (the "Union") and the employers of its members, including NCS. (*See* Hughes Decl. ¶ 5, Ex. A ("Local 631 CBA").) NCS executed an Employer-Union Pension Certification binding it to the terms of the CBA on August 19, 1994. (*Id*. at 2.[2]) NCS employs some members of the Union and, under the terms of the CBA, is responsible for paying and reporting monthly contributions to the Trust. (*Id*.; Compl. ¶ VI.) Northwest Administrators is a trustee of the Trust and owes a fiduciary duty to the Union and other member unions to collect employer contributions on behalf of the Trust. (Hughes Decl. ¶ 19.)

---

[1] Northwest Administrators did not request oral argument. (*See* Mot at 1.) The court concludes that oral argument would not be helpful to its disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court cites to the CM/ECF page numbers in the document headers when referring to the parties' exhibits.

The CBA sets forth the contribution rate, which must be paid by NCS on an employee's behalf on a dollars-per-hour-worked basis. (Local 631 CBA, Art. 23 at 59-60 (setting forth employer contribution rates); Arts. 21-22 (describing pension and health and welfare benefits).) The specific terms of the Trust are set forth in the parties' Trust Agreement and incorporated by reference in the CBA. (*See* Local 361 CBA at 2; Hughes Decl. ¶ 10, Ex. C ("Trust Agreement"); *see also id.*, Ex. B ("2017 Trust Agreement").[3]) The Trust Agreement provides that an employer who is delinquent on payments is liable for the amounts owed plus interest and 20% of the delinquent contribution amounts and interest in liquidated damages. (Trust Agreement, Art. IV at 14.) The interest rates are set forth in the IRC 6621 Table of Underpayment Rates. (*See* Reid Aff. (Dkt. # 8)[4] ¶ 10, Ex. B ("Table of Underpayment Rates").) The Trust Agreement further provides that the employer will pay reasonable attorneys' fees and court costs incurred in recovering any delinquent payments. (*Id.*)

Northwest Administrators alleges that between January 1, 2017, and December 13, 2021, NCS failed to make certain contributions required by the CBA and the Trust Agreement. (Compl. ¶ VIII; Hughes Decl. ¶ 12.) Northwest Administrators states that it conducted an audit and determined that during this period, NCS failed to make

---

[3] This action concerns contributions due between January 1, 2017, and December 13, 2021. (Hughes Decl. ¶ 11, Ex. D ("Audit Report").) During that period, Local 361 and its employers renegotiated and renewed the Trust Agreement, but the provisions regarding collection of employer contributions are identical in both versions. (*Compare* Trust Agreement, Art. IV at 14 (2020), *with* 2017 Trust Agreement, Art. IV at 14.) For simplicity, the court refers to the Trust Agreement the parties executed in 2020 throughout this order.

[4] Mr. Reid's affidavit begins on page 2 of Northwest Administrators's motion for default judgment (Dkt. # 8).

contributions totaling $5,131.35. (Audit Report at 4.) Northwest Administrators further calculates that NCS is liable for $1,032.60 in interest through February 28, 2023, and $1,062.67 in liquidated damages. (Hughes Decl. ¶ 14, Ex. D ("Damages Spreadsheet") at 2.) Finally, Northwest Administrators asserts that it has incurred $1,122.00 in attorneys' fees and $662.00 in court costs and seeks to recover both from NCS. (*Id.*; *see also* Reid Aff. ¶ 14, Ex. C ("Billing Records").)

Northwest Administrators filed this lawsuit to collect unpaid trust funds pursuant to ERISA and the LMRA on October 6, 2022. (*See* Compl. ¶ III.) Northwest Administrators served a summons and copy of the complaint on Kevin Page, NCS's general counsel, on January 3, 2023.[5] (2d Aff. of Serv. (Dkt. # 5).) NCS has not appeared in this action or responded to Northwest Administrators's complaint. (*See generally* Dkt.) On February 24, 2023, Northwest Administrators moved for entry of default against NCS (Mot. for Default (Dkt. # 6)), and the Clerk entered default on February 27, 2023 (Entry of Default (Dkt. # 7)). On March 2, 2023, James Angelino, NCS's purported sole owner, filed a motion styled as an answer to the complaint on behalf of NCS, which wished to proceed *pro se*. (*See* Pro Se Ans. (Dkt. # 10).) Because an artificial entity such as a limited liability company—of which NCS is one—cannot represent itself, or be represented by a non-attorney, the court struck this pleading. (*See*

---

[5] Northwest Administrators also submitted an affidavit of service dated November 7, 2022, indicating that the address given to the process server was a P.O. Box facility. (1st Aff. of Serv. (Dkt. # 4).)

ORDER - 4

3/3/23 Min Order (Dkt. # 11).)  NCS has not filed any other pleading in this action.  (*See generally* Dkt.)

### III.   ANALYSIS

The court begins by discussing the relevant legal standard before turning to Northwest Administrators's motion.

**A.   Legal Standard**

If a defendant fails to plead or otherwise defend, the clerk enters the party's default.  Fed. R. Civ. P. 55(a).  Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff.  *Id.* 55(b)(2).  Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Because granting or denying relief is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court-ordered judgment.  *Id.*  In exercising its discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Default judgment is a two-step process:  first, the court determines that a default judgment should be entered; and second, the court determines the amount and character of the relief that should be awarded.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

917-18 (9th Cir. 1987). At the default judgment stage, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *Id.*; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6). The court must ensure that the amount of damages is reasonable and demonstrated by the plaintiff's evidence.[6] *See* Fed. R. Civ. P. 55(b); *TeleVideo*, 826 F.2d at 917-18; *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.     Jurisdiction**

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the

---

[6] Additionally, this court's Local Rules require plaintiffs to support a motion for default judgment with:

> a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain. [The] [p]laintiff shall provide a concise explanation of how all amounts were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought . . . . If plaintiff seeks attorney's fees, plaintiff must state the basis for an award of fees and include a declaration from plaintiff's counsel establishing the reasonable amount of fees to be awarded, including, if applicable, counsel's hourly rate, the number of hours worked, and the tasks performed.

Local Rules W.D. Wash. LCR 55(b)(2).

judgment in the first place." *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). First, there can be no reasonable dispute that the court has subject matter jurisdiction over this matter. Northwest Administrators filed this case to enforce its clients' rights under federal law: namely, under ERISA, 29 U.S.C. § 1132(e)(1), and the LMRA, 29 U.S.C. § 185(a). *See* 28 U.S.C. § 1331; (Compl. ¶ III).

Second, the court has personal jurisdiction over NCS. ERISA authorizes nationwide service of process and provides that service on a defendant anywhere in the United States is sufficient to establish personal jurisdiction. *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing 29 U.S.C. § 1132(e)(2)). NCS was properly served by Northwest Administrators with the time period provided by Rule 4(m). (*See* 2d Aff. of Service); *see also* Fed. R. Civ. P. 4(m) (requiring service on a defendant within 90 days after the complaint is filed). Accordingly, this court has subject matter jurisdiction over Northwest Administrators's claims and personal jurisdiction over NCS.

**C.     The *Eitel* Factors**

Below, the court analyzes each *Eitel* factor and concludes that the factors weigh in favor of default judgment.

   1.     <u>The Possibility of Prejudice to Plaintiff</u>

Under this factor, default judgment is favored where "the plaintiff has 'no recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). Here, despite timely service of process,

NCS has failed to defend itself in this litigation. (*See* Dkt.) As a result, Northwest Administrators will suffer prejudice if default judgment is not entered because it will "be denied the right to judicial resolution" of its claims. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005). This factor therefore weighs in favor of default judgment.

### 2. The Substantive Merits and Sufficiency of the Claim

The second and third *Eitel* factors, which are frequently analyzed together, require the plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The plaintiff satisfies this standard by making claims that "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). At the default judgment stage, the court "takes 'the well-pleaded factual allegations' in the complaint 'as true'"; however, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Northwest Administrators seeks to recover unpaid contributions to a multiemployer trust fund under ERISA and the LMRA. (*See generally* Compl.); *see also* 29 U.S.C. § 1145 (requiring "every employer who is obligated to make contributions to a multiemployer plan . . . [to] make [them] in accordance with the terms and conditions of such plan or agreement."); 29 U.S.C. § 1132(a)(3) (establishing a fiduciary's right to sue to enforce the terms of multiemployer plans). In order to successfully assert this claim, Northwest Administrators must prove: (1) that the Trust is a multiemployer trust; (2) that

the CBA and Trust Agreement obligated NCS to make employee benefit contributions; and (3) that NCS failed to make contribution payments. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl. Sys.*, No. C03-04858, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004) (stating the elements of a claim to recover unpaid contributions from a multiemployer plan under ERISA).

The court concludes that Northwest Administrators has adequately alleged and supported each of these elements. Northwest Administrators's complaint and supporting documents establish the following: (1) the Trust was set up as a multiemployer benefit plan under ERISA and the LMRA (*see* Compl. ¶¶ II-III; Trust Agreement); (2) NCS executed an Employer-Union Pension Certification binding it to the terms of the CBA, and thus, the Trust Agreement (Compl. ¶ VI; Local 631 CBA at 2); and (3) an audit revealed that NCS failed to make contribution payments required by the CBA and Trust Agreement (*see* Compl. ¶ VIII; Audit Report). Accordingly, both the second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in Relationship to NCS's Behavior

The fourth *Eitel* factor weighs in favor of default when "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010); *see also Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101JLR, 2014 WL 526776, at *6 (W.D. Wash. Feb. 10, 2014) (concluding that this factor weighed against default because the amount of money requested was unreasonable in light of the loss caused by the defendant's actions).

Here, Northwest Administrators seeks to recover the following damages: (1) $5,313.35 in unpaid contributions; (2) $1,032.60 in interest through February 28, 2023; (3) $1,062.67 in liquidated damages; (4) $1,122.00 in attorneys' fees; and (5) $662.00 in litigation costs. (Spreadsheet at 2.) In total, Northwest Administrators seeks $9,192.62. (*Id.*) The court finds this amount is proportionate to NCS's conduct, which constitutes failing to pay the required contributions, particularly in light of the parties' agreements setting forth each of these remedies. (Compl. ¶¶ VI-VII; *see also* Trust Agreement, Art. IV at 14 (providing that an employer who is delinquent on payments is liable for the amounts owed plus interest and 20% of the delinquent contribution amounts and interest in liquidated damages as well as reasonable attorneys' fees and costs); Local 631 CBA, Art. 23 at 59-60 (setting forth employer contribution rates); Table of Underpayment Rates (setting interest rates on delinquent payments).) Because Northwest Administrators seeks only the remedies available under the parties' agreements, the court concludes that the recovery sought is proportional to the harm caused by NCS's conduct. *See Landstar*, 725 F. Supp. 2d at 921. This fourth *Eitel* factor, too, weighs in favor of default judgment.

    4.    <u>The Possibility of a Dispute Concerning Material Facts</u>

There is no dispute as to any material facts here because NCS has failed to appear; the court must therefore accept as true all well-pleaded allegations in the complaint, other than those related to damages. *TeleVideo*, 826 F.2d 917-18. Although NCS's owner filed a pleading styled as an answer, the court struck that pleading because NCS cannot represent itself or be represented by a *pro se* party. (*See* 3/3/23 Min Order.) The court

will not consider the content of the stricken pleading.  (*See id.*)  Seven days have passed since the pleading was stricken and NCS has not appeared in this action.  (*See* Dkt.)  Moreover, Northwest Administrators's billing records indicate that counsel for Northwest Administrators communicated with counsel for NCS regarding Northwest Administrators's intent to seek default, before filing either the motion for default or the instant motion.  (Billing Records at 2.)  Accordingly, there is nothing to suggest a possible dispute of material facts, and this factor therefore weighs in favor of granting default judgment.

        5.    <u>Whether Default was Due to Excusable Neglect</u>

Courts may consider whether there are circumstances surrounding a party's failure to respond that constitute excusable neglect.  *Eitel*, 782 F.2d at 1472 (finding defendant's failure to answer due to excusable neglect where the parties reached a settlement agreement prior to the deadline to answer).  However, excusable neglect may "be lacking where a defendant was properly served with the complaint and notice of default judgment."  *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889-90 (S.D. Cal. 2021).  Here, Northwest Administrators timely served NCS with a summons and copy of the complaint on January 3, 2023.  (*See* 2d Aff. of Serv.)  NCS's deadline to answer the complaint was January 24, 2023.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint.").  NCS did not file an answer (*see* Dkt.), but Northwest Administrators nevertheless waited until February 24, 2023 to file its motion for default (*see* Mot. for Default).  As discussed above (*see supra* § III.C.4), the record indicates that Northwest Administrators discussed

its intent to seek default judgment with NCS (*see* Billing Records at 2). There is nothing in the record to indicate that NCS lacked notice of the action or was misled. Accordingly, the court concludes that NCS's failure to answer the complaint was not due to excusable neglect and that the sixth *Eitel* factor thus weighs in favor of default judgment.

      6.      <u>The Preference for Decisions on the Merits</u>

Although there is a preference for deciding cases on the merits, this preference is not absolute. *See Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09-1585JLR, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011). Where, as here, the defendant's "failure to answer [a c]omplaint makes a decision on the merits impractical, if not impossible," the "preference to decide cases on the merits does not preclude [t]he court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177. NCS's failure to answer Northwest Administrators's complaint makes adjudication on the merits impossible. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl. Sys.*, 2004 WL 1465719, at *2 ("Although federal policy may favor decisions on the merits, Rule 55(b) permits entry of default judgment in situations, such as this, where the defendant refuses to litigate."). The court concludes that the seventh and final *Eitel* factor also weighs in favor of default judgment.

Because the *Eitel* factors weigh heavily in favor of default judgment, the court concludes that default judgment is warranted and turns to Northwest Administrators's recovery.

ORDER - 12

### D. Northwest Administrators's Recovery

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Henry v. Sneiders*, 490 F.2d 315, 317, 317 n.2 (9th Cir. 1974) (noting that a plaintiff need not specify an exact amount in his complaint in order to comply with Rule 54(c)'s requirement and prevail on a motion for default judgment). Although the district court need not accept as true allegations regarding the amount of damages at this phase, *see TeleVideo*, 826 F.2d at 917, other factual allegations are accepted as true, including those establishing the extent of the defendant's liability, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Here, the damages Northwest Administrators seeks to recover do not differ from the relief requested in its complaint. (*See* Compl. ¶ VIII (requesting unpaid contributions, liquidated damages, accrued interest, attorneys' fees, and costs).) The CBA, Trust Agreement, and Table of Underpayment Rates contain specific provisions for calculating the contributions to be made, as well as the interest and liquidated damages assessed for delinquent contributions. (*See supra* §§ II, III.C.3.) Northwest Administrators has filed declarations with exhibits showing the damage and interest calculations. (*See* Reid Aff.; Hughes Decl.); *see also* Local Rules W.D. Wash. LCR 55(b)(2) (describing evidence a plaintiff must file in support of a motion for default judgment). The court concludes that Northwest Administrators may recover the $5,313.35 in unpaid contributions, $1,032.60 in interest, and $1,062.67 in liquidated damages it seeks from NCS.

Northwest Administrators also requests $1,122.00 in attorneys' fees and $662.00 in costs, pursuant to Article IV, Section 3(b)(3) of the Local 361 CBA. (*See* Spreadsheet at 2.) Counsel for Northwest Administrators has filed an exhibit describing the tasks performed by his law firm in this action and hourly billing rates (Billing Records at 2) as well as several orders from this District approving his firm's hourly rates (*see* Reid Aff. ¶ 14, Ex. D). Northwest Administrators describes the litigation costs it seeks to recover as: two process server fees and the filing fee in this court. (Billing Records at 3.) The court finds the billing rates, tasks performed, time spent, and litigation costs incurred reasonable and therefore recoverable under the terms of the CBA. (*See* Local 361 CBA, Art. IV). Northwest Administrators may recover the $1,122.00 in attorneys' fees and $662.00 in costs it seeks from NCS.

Accordingly, the court GRANTS Northwest Administrators's request for relief in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Northwest Administrators's motion for default judgment (Dkt. # 8) and AWARDS Northwest Administrators damages in the amount of $9,192.62. The court DIRECTS the clerk to close this matter.

Dated this 10th day of March, 2023.

JAMES L. ROBART
United States District Judge